## VENUS SHIPPING CO. v. WILSON.

(Circuit Court of Appeals, Second Circuit. January 31, 1907.)

No. 99.

1. SHIPPING—NONFULFILLMENT OF CHARTER—DAMAGES.

The question of the damages to a shipowner arising from a loss of earnings under a charter which was abandoned by the charterer depends upon contingencies of navigation more or less speculative and incapable of being precisely ascertained, and in such case approximate accuracy is all that can be reasonably expected.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 213.]

2. SAME—MEASURE OF DAMAGES.

Defendant chartered libelant's vessel to carry a full cargo of cotton from Savannah to Bremen, agreeing to pay a specified sum per ton for the vessel's registered net tonnage. Subsequently he refused to fulfill the charter, and after some days of negotiation a new charter was made to take a cargo of cotton from Galveston to Bremen, but without waiver of libelant's right to recover damages for breach of the first charter. *Held*, that in estimating such damages the court was justified in assuming that the time taken in loading and discharging would have been the same under the first charter as was actually taken under the second, and in taking as the measure of damages the average daily earnings made under the second charter as compared with the average which would have been made each day under the first if the voyage had been made in the time estimated.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 213 ]

Appeal from the District Court of the United States for the Southern District of New York.

Frederick M. Brown and Butler, Notman & Mynderse, for appellant.

George M. Clarke, Henry G. Ward, and Robinson, Biddle & Ward, for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

PER CURIAM. The decree appealed from awarded damages to the libelant, the owner of the steamship Neptune, for the nonfulfillment of a charter party. The case involves the question of the probable loss sustained by a shipowner through losing the net earnings of a vessel upon a voyage which was abandoned, an inquiry which generally presents difficulties, because its solution depends upon various contingencies of navigation more or less speculative and incapable of being accurately ascertained. In such cases approximate accuracy is all that can be reasonably expected.

By the charter between the parties, made September 27th, the full cargo capacity of the steamship was let for a cotton cargo upon a voyage from New York to Savannah, and thence to Bremen, including the period contemplated for loading the cargo at Savannah and discharging it at Bremen; and the charterer was to pay freight at the rate of a specified sum per ton for the net tonnage of the vessel. The voyage under that charter would have begun October 24th, but several days previously the charterer notified the libelant that owing to conditions in the cotton market it would be impracticable for him to obtain a cargo at Savannah, and suggested the substitution of Galveston as the load·

ing port. Negotiations by cable and otherwise, as to substituting Galveston for Savannah, continued until nearly the end of the month, the respondent offering the then prevailing freight rates for a voyage via Galveston, and the libelant insisting upon the fulfillment of the first charter, or a freight rate which would requite the loss arising from the breach. October 31st the parties made a new charter for a voyage via Galveston upon such terms as had been previously offered by the charterer and refused by the libelant; but this was made upon the understanding that the libelant was not to waive any claim of damage arising from the nonfulfillment of the first charter. Under the second charter the vessel was employed 64 days, beginning November 2d and ending January 5th, and her earnings above the expenses of her navigation and other disbursements, which were to be borne by the libelant, averaged £42 5s. 10d per day.

The court below, approving a very careful and thorough report made by the commissioner to whom the question of damages had been referred, found that under the first charter the vessel would have been employed 55 days, beginning October 24th and ending December 18th, and that her earnings above the expenses and disbursements which the libelant would have incurred would have averaged about £59 per day. Damages were awarded by the court below upon the basis of the difference between the net earnings for the period of 55 days actually realized under the second charter, and those which would have been realized under the first charter. This was equivalent to allowing the whole of the average daily net earnings under the first charter between October 24th and November 2d, the period during which the vessel was out of employment, and the partial loss of daily net earnings from that time until December 18th, when she should have completed her employment under the first charter.

The appellant insists that the court below erred in several particulars in reaching its conclusions of fact in respect to the probable duration of the employment of the vessel if the first charter had been fulfilled, and in respect to the net earnings she would have made. We have carefully examined the proofs in order to ascertain whether the award was excessive. We are satisfied that the findings of the commissioner in respect to the first charter are fairly sanctioned by the proofs in all important particulars. We see no reason why the average daily time made by the vessel on the voyage to Galveston and thence to Bremen should not be accepted as the average daily time she would have made in proceeding to Savannah and thence to Bremen, or why the time occupied in loading and unloading at Galveston and Bremen should not be accepted as sufficient data for showing what time would probably have been occupied in loading at Savannah and unloading at Bremen. Upon the other facts that enter into the question of duration and expense, although doubtless as to some of them there is room for a difference of opinion, we cannot find that any mistake has been made, except in a minor particular. That error arose in treating October as a month of 30 days instead of 31. Criticism is made of the item of brokerage on freight which enters into the estimate of expenses. But this item was not specifically challenged in the 25 exceptions to the commissioner's report, or in the 30 assignments of error in this court;

and, in view of the number of errors assigned which have no other support than the ingenious arguments of counsel, we are not disposed to search for errors not assigned.

Inasmuch as under either charter the vessel would have been at Bremen at the expiration of her term of employment, we are unable to appreciate the contention based upon the difference in freight earnings upon eastward and westward voyages across the Atlantic. The contention that the libelant's damages are in some way limited by the offers made by the charterer during the negotiations preceding the new charter is without any merit. If on the 24th of October, or any later day, the charterer had offered to enter into a new charter, leaving the rights of the parties under the existing charter untouched, and the libelant had refused such an offer, it would be unjust to charge the charterer with the difference between the daily net earnings from that time until the vessel entered upon her new employment. In that case the libelant would have refused an opportunity to mitigate the damages. But the libelant was within its legal rights so long as it did not refuse an offer which it ought to have accepted in order to mitigate the loss. If the libelant had accepted these offers, it would in effect have consented to substitute a new charter, and thereby would have waived its right to enforce the earlier one. The freight rate offered by the respondent, although it was the prevailing rate at the time, was a lower rate than the libelant was entitled to receive under the earlier charter, as rates on cotton cargoes had fallen materially since the making of that charter. The result proves that the offers made by the charterer would not, if they had been accepted, have covered libelant's loss.

Criticism has been made of the allowance by the court below of the cable messages between the libelant and its agents, Wright & Son, the brokers who negotiated the charter for the libelant. It is apparent that the messages from Wright & Son were sent in the interests of the charterer, and upon his application to have them intercede with the libelant for a modification of the original charter or for the acceptance of offers for its cancellation; and the messages from the libelant were in response to those from Wright & Son.

The decree should be modified by deducting the daily loss in net earnings for a single day, with interest thereon, and, as thus modified, is affirmed, with interest and costs of this appeal.