## UNITED TRANSP. CO. v. BERWIND–WHITE COAL–MINING CO.

(Circuit Court of Appeals, Second Circuit. May 10, 1926.)

No. 296.

1. **Shipping ⬅43—Under charter party authorizing charterers to cancel charter party not later than date of ship's readiness, if she was not ready on or before July 31, loading lay days to commence from time ship was ready and custom house formalities fulfilled, held, that entry of ship at custom house was not prerequisite to being ready for cargo.**

Where charter party authorized charterers to cancel charter party not later than date of ship's readiness, if steamer was not ready for cargo on or before July 31, loading lay days to

commence "from time steamer is ready to load, and custom house formalities are fulfilled," held, that entry of ship at custom house was not prerequisite to readiness for cargo at loading port, and tender on July 31 of ship which arrived on that day after custom house closed was good tender.

2. **Shipping ⬅43—Provision of charter party, authorizing charterers to cancel charter party if cargo license should not be received, held not applicable to cancellation because vessel was not ready for cargo within time specified in charter.**

Provision of charter party authorizing parties to cancel charter party if cargo license should not be received or be revoked, or at any time when steamer is waiting for cargo, on paying demurrage, held not applicable to cancellation on ground that vessel was not ready for cargo within time specified in charter party.

3. **Shipping ⬅58(3)—Shipowner's damages for charterers' cancellation of charter party is difference between what he would have earned under charter party and what he earned under substitute charter.**

Shipowner's measure of damages for charterers' cancellation of charter party is difference between what shipowner would have made under canceled charter if no casualty had occurred and no extraordinary expenses had been encountered, and what he earned under substitute charter.

4. **Appeal and error ⬅1073(7)—Inaccuracy of trial court in computing damages for charterer's wrongful cancellation of charter party must be plainly injurious to move appellate court.**

Inaccuracy of trial court in computing shipowner's damages for charterer's wrongful cancellation of charter party must be plain and plainly injurious to move appellate court in favor of charterer, the original wrongdoer.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the United Transportation Company (the Steam Navigation Company of Canada, Limited, substituted) against the Berwind-White Coal-Mining Company. Decree for libelant (13 F.[2d] 281), and libelee appeals. Affirmed.

Libelant owned the steamship Kerry Range, and chartered her to respondent to carry a full cargo of coal from Hampton Roads, Va., to Rio de Janeiro. The charter provided:

"It is agreed that the lay days for loading shall be as follows: Commencing from

The charter, while intended to be operative some months after the close of World War hostilities, still contained many war clauses, including the following:

"Should cargo license not be received or be revoked, charterers have the privilege of canceling not later than date of steamer's arrival at loading port by paying six days' demurrage in full liquidation of damages to owners. Also charterers to have privilege of canceling at any time while steamer is waiting for cargo by paying demurrage, counting time on demurrage from time of steamer's arrival and adding an additional six days' demurrage thereto, same being hereby agreed upon as the amount of liquidated damages due to owners; but if any cargo has been loaded the same shall be discharged as soon as reasonably practicable, and demurrage shall run from time of steamer's arrival until so discharged and six days thereafter; owners to have a lien on cargo for all demurrage and expenses of loading and of discharging and charterers to pay the same."

The Kerry Range arrived at Hampton Roads on the afternoon of July 31st. The custom house was closed, it was impossible to enter the ship, and she did not in fact enter until next morning. The vessel was physically fit to load. This was found as a fact below, and we confirm it. Without entering, and about 5 p. m. of July 31st, the vessel was formally tendered to respondent as fit and ready to load. Respondent rejected her and canceled the charter on the declared ground that, there having been no custom house entry prior to reporting for loading, the above-quoted charter provision had not been fulfilled; i. e., the steamer was not ready for cargo on July 31, 1919.

Libelant immediately sought other occupation for its steamer, and shortly obtained another charter from Baltimore to Buenos Aires, carrying the same cargo at a lower rate of freight. The substitute charter was also less favorable to the owners in other ways than the document canceled by respondent.

Libelant brought suit to recover damages for breach of charter party and recovered below. Respondent appealed.

Leo J. Curren and Herman S. Hertwig, both of New York City, for appellant.

Barry, Wainwright, Thacher & Symmers, of New York City (James K. Symmers and John C. Crawley, both of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The defense raised below was twofold: (1) That under the charter party language first above quoted the parties intended that no tender of this vessel could or should be made until "custom house formalities are fulfilled"; and (2) that as matter of law (without specific agreement to the contrary) entry at custom house was a prerequisite to being "ready for cargo at her loading port."

Both these propositions Learned Hand, Circuit Judge, in the court below, decided against respondent, and we agree with his reasons and result. We add as references Gill v. Browne, 53 F. 394, 3 C. C. A. 573, and Bonanno v. Tweedie Co. (D. C.) 117 F. 991, affirmed 130 F. 448, 64 C. C. A. 650. These cases are not "on all fours," but excellently illustrate the principles of the decision below.

[2] At this bar appellant asserts reliance on the second above quoted excerpt from the charter party, declaring that this conferred upon it the right to cancel the charter party substantially at any time upon paying six days' demurrage and expenses. Of this belated contention it is enough to say that the rights conferred by that portion of the charter party could arise only if and when "cargo license was not received or was revoked," or at some time "while steamer was waiting for cargo."

There is not a word in the record concerning difficulties with any cargo license, and assuredly this steamer never waited for cargo; she never had a chance to. Consequently these clauses of the charter party never became applicable.

Complaint is made of the amount of damages, although it is admitted that the cause is legally identical with Venus Shipping Co. v. Wilson, 152 F. 170, 81 C. C. A. 368; and that the court below professed to follow that case. Remembering (as was said in the Venus Case) that "approximate accuracy is all that can be reasonably expected," we have gone over the commissioner's report and think appellant's complaints baseless.

[3] The questions in such a case are these: (1) How much would the shipowner have made under the canceled charter if all had gone well; if no casualty had occurred, and no extraordinary expense been encountered?

(2) How much did the charterer make under the substitute charter, the circumstances being what they actually were?

[4] The basic facts ascertained, and it appearing that the substitute charter represented a loss, it is the business of the court to grant as solatium to the injured shipowner the difference between what he *did earn* and what he *would have earned* during the time that would have been required to fulfill the charter of which he was wrongfully deprived. The computation and adjustment of such a matter is not a scheme of absolute certainty, but the inaccuracy must be plain, and plainly injurious, to move any court in favor of the original wrongdoer; i. e., contract breaker. We are not so moved in this case.

Decree affirmed, with interest and costs.